UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDA L. SHAFFER,

     Plaintiff,

v.                                                                    Case No. 8:17-cv-00566-T-02TGW

SERVIS ONE, INC. d/b/a BSI FINANCIAL
SERVICES, LAW FIRM GARY M.
SINGER, P.A., and MCCORMICK
106, LLC,

     Defendants.

_____/


## **ORDER**

This matter comes to the Court on Defendant Servis One, Inc.'s ("BSI")

Motion to Dismiss Plaintiff's Second Amended Complaint With Prejudice. Dkt.

29. Following this Court's order on a prior motion to dismiss, BSI is the only

remaining defendant. Dkt. 23. Plaintiff has filed a response in opposition to the

instant motion. Dkt. 35. The Court hereby GRANTS in part BSI's Motion to

Dismiss.

## **BACKGROUND**

The Court outlined this case's factual and procedural background in its

Order on a prior motion to dismiss. Dkt. 23 at 1-3. Essentially, Plaintiff brought

claims in federal court following entry of a Florida state court judgment for

foreclosure on a mortgage. *Id.* Finding that some of these claims were inextricably intertwined with the state court's foreclosure judgment and that Plaintiff had an opportunity to raise them in the prior proceeding, the Court dismissed with prejudice claims relating to the validity of the debt under the *Rooker-Feldman* doctrine.[1] Dkt. 23 at 13. The Court left open the possibility, however, for Plaintiff to "allege[] improper debt collection activity by BSI that occurred after the entry of the Foreclosure Judgment that is not inextricably intertwined." Dkt. 23 at 11.

In response, Plaintiff filed her Second Amended Complaint (the "Complaint") alleging debt collection practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 ("FCCPA"). Dkt. 24 ¶ 1. Count I alleges that BSI "sent multiple written communications to [Plaintiff] in an attempt to collect a debt . . . in violation of the FDCPA." *Id.* ¶ 14. Count II is for a violation of the FCCPA based on the same conduct. *Id.* ¶ 23.

Plaintiff attached to her Complaint two examples of the communications at issue. Dkt. 24 at 8, 10. One is a letter from BSI titled "Mortgage Statement" and dated July 18, 2016. *Id.* at 8. Plaintiff claims that this letter "misleads [her] about

---

[1] The *Rooker-Feldman* doctrine originates from a pair of cases decided by the U.S. Supreme Court, *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine is jurisdictional in nature. *Jackson v. Farmers Ins. Grp./Fire Ins. Exch.*, 391 F. App'x 854, 856 (11th Cir. 2010).

the legal status of the debt by failing to inform her the loan has been accelerated,

the loan was in foreclosure, and the loan was reduced to judgment," that it "add[s]

additional amounts due for costs and fees after a judgment was already entered

[that] were not authorized expressly by the document creating the debt," and that it

"seeks to collect an amount of debt to bring her loan current, but the amount stated

was not accurate." Dkt. 24 ¶¶ 15-17. Plaintiff also argues that the letter improperly

sought to collect debt from her directly, though BSI knew or should have known

she had counsel. *Id.* ¶ 18.

The second attached document is a Form 1099-C Cancellation of Debt that

lists BSI as the creditor and an "[a]mount of debt discharged" of $354,354.47.

Dkt. 24 at 10. Plaintiff contends that this was misleading and a false representation

of the legal status of the debt because, first, no money is owed to BSI, and second,

McCormick 106, LLC continued to "pursue [Plaintiff] for a personal judgment for

a deficiency judgment on the note in August of 2017." Dkt. 24 ¶¶ 19-20. She

further argues the document is "false or misleads [Plaintiff] that the document was

a document authorized [or] issued by the United States or creates a false

impression as to its source, authorization, or approval." *Id.* ¶ 21.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662,678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted).

Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). Courts may also consider documents attached to a motion to dismiss if they are (1) central to the plaintiff's claim; and (2) undisputed or, in other words, the "authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citations omitted).

## DISCUSSION

The FDCPA prohibits a "debt collector" from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This includes falsely representing the amount or legal status of a debt, § 1692e(2)(A), threatening to take an unlawful action, § 1692e(5),

distributing a written communication which simulates or is falsely represented to be a document authorized by an official source, § 1692e(9), or using false or deceptive means to collect a debt, § 1692e(10).

BSI first argues that res judicata and *Rooker-Feldman* bar Plaintiff's claims. Dkt. 29. Even if the claims are not barred, BSI contends its conduct does not constitute "debt collection" and the FDCPA and FCCPA therefore do not apply. *Id.* BSI lastly claims that 12 C.F.R. § 1026.41 requires BSI to send monthly statements to Plaintiff, thereby preempting Fla. Stat. § 559.72(18), and that Plaintiff's claim that BSI should have sent communications to Plaintiff's lawyer is conclusory and deficient. *Id.*

Though Plaintiff's claims are not barred by res judicata or *Rooker-Feldman*, the conduct alleged is not debt collection under the FDCPA and FCCPA. As such, because all of Plaintiff's claims are premised on violations of the FDCPA and FCCPA, dismissal is appropriate.

I.   <u>Res judicata does not bar Plaintiff's claims</u>.

"Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.,* 193 F.3d 1235, 1238 (11th Cir. 1999) (citation omitted). Res judicata requires (1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) the parties, or

those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases. *Id.*

BSI argues that Plaintiff could have raised these arguments at the state proceeding. Indeed, Plaintiff included the purported mortgage statement (but not the 1099-C) in her motion to vacate the judgment of foreclosure and demand for evidentiary hearing. Dkt. 29 at 41.[2] The state court denied the motion without elaboration. *Id.* at 42.

Even assuming the court denied the motion on the merits, res judicata does not preclude claims "which arise after the original pleading is filed in the earlier litigation. Instead . . . claims that 'could have been brought' are claims in *existence at the time the original complaint is filed* or claims actually asserted . . . in the earlier action." *In re Piper Aircraft Corp.,* 244 F.3d 1289, 1298 (11th Cir. 2001) (emphasis in original) (internal quotations and citation omitted). Plaintiff's claims concern alleged debt collection activity that followed the filing—and judgment—of the foreclosure action.

---

[2] There does seem to be a factual dispute about whether Plaintiff included the 1099-C in her motion to vacate the state court judgment. While Defendant claims she did, Dkt. 29 at 5, the document is not attached in the exhibit and in her Complaint Plaintiff seems to assert she received the 1099-C in February 2017, long after the filing of the motion, Dkt. 24 at 4. In any event, the dispute is moot. It is also irrelevant in determining whether BSI's activity constitutes "debt collection" as discussed below.

II.    *Rooker-Feldman* does not bar Plaintiff's claims.

Similarly, *Rooker-Feldman* does not bar Plaintiff's claims because

Plaintiff's claims are independent from the state court judgment. To bar claims

under *Rooker-Feldman*, the claim must be "inextricably intertwined" with a state

court decision, meaning that (1) "the success of the federal claim would

'effectively nullify' the state court judgment"; or (2) "the federal claim would

succeed 'only to the extent that the state court wrongly decided the issues.'"

*Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1262-63 (11th Cir. 2012)

(citation omitted).

The Court has already determined that *Rooker-Feldman* does not bar claims

based on alleged debt collection activity following entry of the state court

judgment, only claims that seek to dispute the debt. This is because a court could

find that the judgment was valid but attempts to collect the judgment nonetheless

unlawful; such a finding would not nullify or contravene the underlying state court

decision. BSI raises no new arguments in this regard. Dkt. 29 at 5-6; s*ee also*

*Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1286 (11th Cir.

2018) ("A claim about conduct occurring after a state court decision cannot be

either the same claim or one 'inextricably intertwined' with that state court

decision, and thus cannot be barred under *Rooker–Feldman*.").

III.  BSI's alleged conduct does not constitute debt collection.

Plaintiff's only claims allege violations of the FDCPA and FCCPA. "[T]o state a plausible FDCPA claim under § 1692e, a plaintiff must allege, among other things, (1) that the defendant is a debt collector and (2) that the challenged conduct is related to debt collection." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012) (internal quotation marks omitted). Furthermore, the FDCPA and FCCPA are largely similar and "the FCCPA is construed in accordance with the FDCPA." *Lilly v. Bayview Loan Servicing, LLC*, No. 2:17-cv-00345, 2017 WL 4410040, at *2 (M.D. Fla. Oct. 4, 2017); s*ee also Kelliher v. Target Nat'l Bank,* 826 F.Supp.2d 1324, 1327 (M.D. Fla. 2011) ("The FCCPA provides that '[i]n applying and construing [Fla. Stat. § 559.77(5)], due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the [FDCPA].'").

"[T]he Eleventh Circuit has not established a bright-line rule" as to what qualifies as "in connection with the collection of any debt." *Dyer v. Select Portfolio Servicing, Inc.*, 108 F. Supp. 3d 1278, 1280 (M.D. Fla. 2015). "As a general principle, the absence of a demand for payment is not dispositive," and courts should "instead consider whether the overall communication was intended

to induce the debtor to settle the debt." *Wood v. Citibank, N.A.*, No. 8:14-cv-2819-T-27EAJ, 2015 WL 3561494, at *3 (M.D. Fla. June 5, 2015) (citations omitted). To this end, courts "should look to the language of the letters in question, specifically to statements that demand payment, discuss additional fees if payment is not tendered, and disclose that the [writer] was attempting to collect a debt and was acting as a debt collector." *Pinson v. Albertelli Law Partners LLC*, 618 F. App'x 551, 553 (11th Cir. 2015) (modification in original) (citations omitted). Communications, moreover, "can have more than one purpose, for example, providing information to a debtor as well collecting a debt." *Id.* (citations omitted).

Based on the allegations in Plaintiff's Complaint, including the attached documents, the Court finds as a matter of law that BSI's conduct was not related to debt collection under the FDCPA or FCCPA.[3] The Court will handle the communications in turn.

---

[3] Though Plaintiff argues that fact-finding is necessary to determine whether the written communications are related to debt collection, she cites to no case for this proposition. Indeed, cases resolved at the 12(b)(6) stage outnumber by a wide margin cases where courts saw the need to develop the factual record. Florida courts have proceeded similarly. *See, e.g.*, *Vanecek v. Discover Fin. Servs., LLC*, No. COCE14023621, 2015 WL 6775633 (Fla. 17th Cir. Ct. 2015) ("[T]he monthly billing statement was not an attempt to collect a debt as a matter of law[.]"); *Havey v. Discover Fin. Servs., LLC*, No. 2015-SC-18, 2015 WL 6965138 (Fla. 12th Cir. Ct. 2015) (same).

*1. The July 18, 2016 letter was a mortgage statement and not debt collection.*

The Federal Truth in Lending Act ("TILA") Regulation Z requires BSI, a servicer, to send monthly mortgage statements. 12 C.F.R. § 1026.41. Plaintiff's Exhibit A, the July 18, 2016 statement, is one such document. While acknowledging it is a monthly mortgage statement that BSI must send, Plaintiff argues the letter "contained language beyond what is required for informational purposes." Dkt 35 at 5. Yet in support she points only to the payment coupon at the bottom of the letter which states "Please return this portion with your payment." *Id.* Plaintiff also relies on *France v. Ditech Fin., LLC*, No. 8:17-cv-3038-T-24MAP, 2018 WL 1695405 (M.D. Fla. Apr. 6, 2018) and *Jackson v. Carrington Mortg. Servs., LLC*, No. 17-60516-CIV, 2017 WL 4347382 (S.D. Fla. Sept. 29, 2017), *reconsideration denied*, 2017 WL 5513704 (S.D. Fla. Nov. 17, 2017).

The Consumer Financial Protection Bureau (the "CFPB") has issued a bulletin providing that a "servicer acting as a debt collector would not be liable under the FDCPA for complying with [monthly mortgage statement] requirements." Implementation Guidance for Certain Mortgage Servicing Rules, 10152013 CFPBGUIDANCE, 2013 WL 9001249 (C.F.P.B. Oct. 15, 2013). Courts have largely followed this guidance. *See, e.g., Brown v. Select Portfolio Servicing,*

*Inc.*, No. 16-62999-CIV, 2017 WL 1157253 (S.D. Fla. Mar. 24, 2017) (noting the guidance and finding that monthly mortgage statements in compliance with TILA were not debt collection).[4]

This contrasts with communications using language that falls outside the realm of TILA or "debt collection language." This might include, for example, increasingly severe language, *Kelliher*, 826 F. Supp. 2d at 1328 ("Account Seriously Past Due . . . but we may still be able to offer special payment arrangements . . . ."; "If we don't set up payment arrangements for your [debt] soon, we'll charge off your account and report it to the credit bureaus as bad debt. There's still time to work with us."), clear language such as "this is an attempt to collect a debt," *Lear v. Select Portfolio Servicing, Inc.,* No. 17-62206-CIV, 2018 WL 1960108, at *3 (S.D. Fla. Apr. 25, 2018); *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014) (communication stating inter alia it is "for the purpose of collecting a debt" and refers to "collection efforts"); *Reese*, 678

---

[4] The bulletin does not specify whether senders are not liable under the FDCPA because statements sent pursuant to Regulation Z are not "debt collection" as contemplated by the statute or for a separate reason. The court in *Brown* took the former approach. *See also Green v. Specialized Loan Servicing LLC*, 280 F. Supp. 3d 1349, 1355 (M.D. Fla. 2017); *Williams v. Bank of Am., N.A.*, No. 617CV103ORL31TBS, 2017 WL 3662441, at *5 (M.D. Fla. Aug. 24, 2017). No matter the reasoning, courts still find that when the statements conform with TILA an FDCPA claim is not actionable. *See, e.g.*, *Antoine v. Carrington Mortg. Servs., LLC*, No. 0:17-cv-61216-WPD, 2017 WL 3404389, at *2 (S.D. Fla. Aug. 8, 2017).

F.3d at 1217 (communication "demand[ing] full and immediate payment,"

threatening to add attorney's fees to the total amount "for which collection is

sought," and stating collector "is attempting to collect a debt"), or explicit

consequences of nonpayment, *Pinson*, 618 F. App'x at 554 (separate

communications noting fees would continue to accrue in absence of payment and

amount owed would increase if claimant did not reinstate loan).

But here BSI's letter simply contains the amount due, payment due date, and

delinquency information, all in conformity with TILA requirements. 12 C.F.R. §

1026.41(d). Moreover, this mortgage statement is substantially similar to model

form H-30(B) provided by Appendix X to Part 1026 of TILA Regulation Z. *See

also Jones v. Select Portfolio Servicing, Inc.*, No. 1:18-CV-20389-UU, 2018 WL

2316636, at *4 (S.D. Fla. May 2, 2018) (noting the similarities between a

statement and the model form in finding no debt collection). As for information

not explicitly required by TILA, Plaintiff only points to the payment coupon. Even

that, however, is included in the provided H-30(B) template.

In *Jackson*, the court found the addition of a payment coupon to be a

"significant" deviation from the CTFB bulletin. 2017 WL 4347382, at *3. The

court held that this, along with the inclusion of two late fees, a total amount due,

and a delinquency notice, was enough to create a factual dispute as to whether the

communication was related to debt collection. *Id.* The Court, however, agrees with

the reasoning in *Jones* that the addition of a payment coupon, especially one that

conforms with the TILA template, is insufficient to constitute debt collection.

2018 WL 2316636, at *4; s*ee also Brown*, 2017 WL 1157253, at *4 (granting

motion to dismiss where mortgage statement included payment coupon).

The statements in *France*, meanwhile, included an incorrectly charged late

fee if the amount was not paid by a specific date. *France*, 2018 WL 1695405, at

*5; *cf. Patel v. Seterus, Inc.*, No. 6:14-cv-1585-Orl-41GJK, 2015 WL 13547010,

at *4 (M.D. Fla. June 19, 2015) (correctly charged late fees on monthly mortgage

statements do not violate the FDCPA). Though the statement in this case includes

a due date (as does the TILA model form), failure to pay by this date will result in

a "$0.00" late fee.

In short, the Court finds that the July 18, 2016 letter, virtually a carbon copy

of the sample form provided by Regulation Z, does not constitute debt collection.

2. *BSI's filing of the 1099-C was not debt collection.*

Plaintiff does not seem to argue that BSI's filing and delivery of the 1099-C

itself constitutes collection activity. She instead alleges the 1099-C represents a

discrete violation of the FDCPA should the Court find BSI engaged in debt

collection. In any event, the Court finds that nothing on the face of the 1099-C nor implicit in its filing suggests debt collection.

While most caselaw about the 1099-C concerns whether it can single-handedly extinguish a debt, *see Ware v. Bank of Am. Corp.*, 9 F. Supp. 3d 1329, 1340-41 (N.D. Ga. 2014) (listing numerous cases where courts found that 1099-C is insufficient to extinguish debt), the U.S. Court of Appeals for the Third Circuit confronted a similar issue in *Gorbaty v. Portfolio Recovery Assocs., LLC*, 355 F. App'x 580 (3d Cir. 2009). In spite of the filing of a 1099-C, the court first noted that the record contained "no allegation that [the collector] was seeking the payment of any money in connection with the cancelled debt," and that the claimant did not "offer[] any facts to support his allegations that [the collector] used false, unconscionable, or deceptive forms in the collection of a debt." *Gorbaty*, 355 F. App'x at 581. The court went on to hold that the "mailing and receipt of a [1099-C] by itself, without any indication that the notice was used in connection with the collection of a debt, does not state a claim for violation of the FDCPA." *Id.* at 581-82.[5]

---

[5] The court also observed that if the 1099-C did contain false information, the claimant could "dispute the amount of cancelled debt with the Internal Revenue Service to reduce his unwanted tax liability, or bring suit against [the collector] under alternative provisions of law." *Id.* at 582 (citations omitted).

Here, there is similarly no indication that BSI's 1099-C was filed in connection with the collection of a debt. While the Court need not reach Plaintiff's underlying claim about the misleading nature of the 1099-C, it does note that both the above case law and Internal Revenue Service opinion suggest that a 1099-C does not by itself extinguish debt or even preclude a creditor from pursuing collection. *In re Zilka*, 407 B.R. 684, 688–89 (Bankr. W.D. Pa. 2009) (citations omitted). Rather, the filing of a 1099-C and its delivery to the borrower are required when a lender writes off a debt as a loss for accounting purposes. *See Amtrust Bank v. Fossett*, 224 P.3d 935, 936 (Ariz. Ct. App. 2009) (citations omitted).

Even when weighed together, the two documents and Plaintiff's allegations are insufficient for the Court to find that BSI was engaged in debt collection. As a result, the FDCPA and FCCPA, including the provision requiring a debt collector to send documents to a debtor's counsel, do not apply.

In her Complaint, Plaintiff does allude to additional written communications that might evidence debt collection. The Court therefore grants Plaintiff leave of twenty days (20) to amend her Complaint, if possible and consistent with the foregoing, to include any such information.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

I.   Defendant BSI's Motion to Dismiss (Dkt. 29) is **GRANTED** in part;

II.   Plaintiff's Second Amended Complaint is **DISMISSED with leave to amend**. Plaintiff may file a Second Amended Complaint within twenty (20) days of the entry of this Order. In the absence of timely amendment, dismissal will be with prejudice without any further action of the Court.

**DONE AND ORDERED** at Tampa, Florida, on November 5, 2018.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record